IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEANETTE R.,[1]

       Plaintiff,

     v.

NANCY BERRYHILL,
Acting Commissioner of the Social Security
Administration,

       Defendant.

_____

Civ. No. 6:17-cv-01015-MC

OPINION AND ORDER

MCSHANE, Judge:

     Jeanette R. ("Plaintiff") brings this action for judicial review of the Commissioner's

decision denying her applications for disability insurance benefits ("DIB") and supplemental

security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). This

court has jurisdiction under 42 U.S.C. § 405(g).

     On June 10, 2013, Plaintiff filed an application for DIB and SSI, alleging disability as of

May 30, 2011. After a hearing, the administrative law judge ("ALJ") determined Plaintiff was

not disabled under the Act from May 30, 2011, through the date of the decision. Tr. 75–85.[2]

Plaintiff argues the ALJ erred by improperly discounting Plaintiff's subjective symptom

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-
governmental party or parties in this case.  Where applicable, this opinion uses the same designation for a non-
governmental party's immediate family member(s).

[2] "Tr." refers to the Transcript of the Social Security Administrative Record provided by the Commissioner.

testimony, erroneously rejecting the medical opinions of Dr. Gomes, Dr. Dobles, and Licensed

Marriage and Family Therapist ("LMFT") Kammerer, improperly rejecting the lay witness

testimony of Plaintiff's friend, and incorrectly finding that Plaintiff could perform other work.

Because the Commissioner's decision is not based on proper legal standards and not supported

by substantial evidence the Commissioner's decision is REVERSED and this case is

REMANDED for further proceedings.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on

proper legal standards and the legal findings are supported by substantial evidence in the record.

42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

"Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill*

*v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980

(9th Cir. 1997)). To determine whether substantial evidence exists, I review the administrative

record as a whole, weighing both the evidence that supports and that which detracts from the

ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can

reasonably support either affirming or reversing, 'the reviewing court may not substitute its

judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d

519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine

whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920. The initial burden of proof

rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with

respect to the first four steps, the burden shifts to the Commissioner at step five. 20 C.F.R. §§ 404.1520 & 416.920. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

Plaintiff was 27 years old on her alleged onset date. Tr. 139. She has past relevant work as a gas station attendant and mold maker. Tr. 84. She alleged disability based on posttraumatic stress disorder ("PTSD"), social anxiety, borderline bipolar disorder, and depression. Tr. 139. The ALJ found Plaintiff's testimony not entirely credible. Tr. 80–81. The ALJ determined Plaintiff had the severe impairments of: depression, PTSD, anxiety, panic disorder, and alcohol abuse. Tr. 78. Ultimately, the ALJ resolved that Plaintiff retained the RFC to perform a full range of work at all exertional levels, except she was limited to simple, repetitive, routine tasks requiring no more than occasional interaction with supervisors and no more than brief, infrequent, superficial contact with co-workers and the general public. Tr. 80. The VE opined someone with Plaintiff's RFC as constructed by the ALJ could perform the jobs of janitor, housekeeper/cleaner, and printed product assembler. Tr. 84. Therefore, the ALJ concluded Plaintiff was not disabled under the Act. I address each of Plaintiff's argument in turn.

As a preliminary matter, I note that the living situation Plaintiff described was somewhat unusual. Plaintiff and her son live with a man ("Bob") and she apparently performs a number of live-in housekeeping and farming chores in lieu of rent. Tr. 80–81, 306, 394. Bob is referred to

throughout the record interchangeably as her friend, boss, landlord, roommate, employer, and co-parent. Tr. 17, 394, 411, 439, 447, 463, 466, 745, 771.

## I.    Weight of the Claimant's Testimony

Plaintiff argues that the ALJ erred in finding Plaintiff not fully credible. "Where, as here, Claimant has presented evidence of an underlying impairment and the government does not argue that there is evidence of malingering, we review the ALJ's rejection of her testimony for 'specific, clear and convincing reasons.'" *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). An ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nonetheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

The ALJ relied on Plaintiff's activities of daily living in discounting her subjective symptom testimony. An ALJ may consider a claimant's activities of daily living in assessing whether those activities contradict her testimony about symptoms or functional limitations, or in assessing whether those activities represent functional capacities that are transferable to the workplace. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ discounted Plaintiff's testimony based on the latter. The ALJ cited Plaintiff's ability to go shopping, play with her son, help her son with homework, perform various household chores including meal preparation and housekeeping, as well as her ability to attend occasional family events "such as school concerts, summer camps, weddings, and funerals." Tr. 80. The ALJ also cited the fact that Plaintiff served as a "live-in housekeeper in lieu of rent," and she took care of her son and two nephews. Tr. 80–81. The ALJ found that "[s]uch activities reasonably suggest she retains significant work-related functioning." Tr. 80.

There were some indications in the record that Plaintiff struggled at times to complete her chores and Plaintiff cites a few isolated instances in which Bob performed some of the housework instead of Plaintiff; however, the overwhelming weight of the evidence supports the ALJ's finding that Plaintiff's activities represented functional capacities transferable to the workplace. Tr. 488, 492, 554, 558, 591, 735, 791. In addition to cleaning, laundry, and cooking, Plaintiff cared for four cats, one dog, 15 laying hens, two roosters, five butchering chickens, two pigs, and one cow. Tr. 308, 394. Plaintiff tended a large garden, harvested the vegetables, and canned or froze the excess crops. Tr. 35, 37, 308, 401. Plaintiff described her farm work as "intense" and "ongoing." Tr. 591. Between cleaning and farming duties, she reported working 12 or more hours per day, seven days per week. Tr. 488. She explained that she "works constantly

unless she's sleeping." Tr. 492. Accordingly, the ALJ's finding was supported by substantial evidence.

The ALJ additionally found Plaintiff's anger and anxiety were related to acute social stressors. Tr. 81. The ALJ cited instances in which Plaintiff's symptoms were exacerbated by the stress of taking care of her son, and frustration that her insurance declined to cover a particular medication. Tr. 81, 349, 378. Although such a rationale standing alone is insufficient to uphold the ALJ's overall credibility finding, the ALJ may rely on the fact that a claimant's symptoms were sometimes caused by situation stressors. *See Menchaca v. Comm'r Soc. Sec. Admin.*, 6:15-cv-01470-HZ, 2016 WL 8677320, at *7 (D. Or. Oct. 7, 2016). Here, the ALJ provided additional proper reasons for discounting Plaintiff's symptom testimony.

The ALJ also found that Plaintiff's credibility was "undermined by her historically tenuous connection to the workforce." Tr. 82. The ALJ noted that Plaintiff's "annual earnings have exceeded the level demonstrating substantial gainful activity only twice in the previous decade." Tr. 82. In *Thomas v. Barnhart*, the Ninth Circuit held that the claimant's testimony was undermined by the fact that she had an "extremely poor work history" and "years of unemployment between jobs[.]" *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Here, however, Plaintiff turned 18 in 2002 and had a baby in 2008. Tr. 82, 258. In the interim, there was only one year in which Plaintiff was unemployed, which significantly undermines the ALJ's finding. Tr. 283. Further, the ALJ erred by focusing exclusively on Plaintiff's earnings, rather than her hours worked. Plaintiff was earning between $6.50 and $8.50 per hour, and when cross-referenced with her annual earnings, the record reflects that in four of the years between 2002 and 2007, Plaintiff worked an average of 21 to 35 hours per week. Tr. 283, 289. By focusing on

Plaintiff's earnings, rather than hours worked, the ALJ erred. *See Kimble v. Berryhill*, No. 3:15-cv-01641-JE, 2017 WL 3332256, at *9 (D. Or. Aug. 4, 2017).

The ALJ also cites Plaintiff's report that she departed the workforce in 2008 due to her pregnancy as evidence of her tenuous connection to the workforce. Tr. 82. However, as has been recognized by at least one court in this circuit, a parent should not be penalized for a lack of work history for years spent raising children. *Aichele v. Astrue*, 2010 WL 1849009, at *6 (E.D. Wash. Apr. 30, 2010). The fact that Plaintiff stayed at home with her infant son is not a clear-and-convincing reason for discounting her subjective symptom testimony.

The ALJ further found that Plaintiff developed effective coping mechanisms for her anxiety. Tr. 81. The ALJ cited one occasion in which Plaintiff used her coping strategies to manage her feelings of anger after she narrowly avoided a collision with another car. *Id.* While, the effectiveness of treatment is relevant in determining the severity of a claimant's symptoms, the fact that Plaintiff was able to manage her anger on one occasion is not a clear-and-convincing reason for discounting Plaintiff's testimony. 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3). Moreover, the record reflects that despite Plaintiff's coping strategies she was often unable to control herself, and she explained that her coping strategies "sometimes" worked. Tr. 795.

Although she learned coping strategies, Plaintiff continued to present at appointments with an angry and hostile affect. Tr. 844, 848, 852, 917, 927. She continued to have angry outbursts and verbal confrontations. Tr. 345, 401, 590, 750, 809, 948. She also engaged in a physical altercation with Bob in which she shoved and slapped him. Tr. 969–70. As of 2016, Plaintiff still reported feeling "unable to stop herself once she gets to a point of escalation," and in 2017 her therapist noted that Plaintiff still needed ongoing services with regard to "managing her reactivity to stress" and "finding new ways to cope." Tr. 17, 43. Accordingly, the purported

effective coping mechanisms do not constitute a clear-and-convincing reason for discounting Plaintiff's testimony.

Finally, the ALJ found there was no contemporaneous medical evidence to support Plaintiff's alleged onset date of May 2011. Although a lack of medical evidence cannot serve as the sole reason for discrediting a claimant's testimony, "it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Plaintiff reported that she suffered a mental breakdown during a May 2011 doctor's visit; however, there is no record of the visit. Tr. 81. The ALJ properly found that the absence of medical evidence from September 2009 to January 2012 indicated Plaintiff was doing well during that period. Tr. 81.

Although I do not find the purported tenuous connection to the workforce or effective coping mechanisms to be clear-and-convincing reasons for rejecting Plaintiff's symptom testimony, these errors are harmless because Plaintiff's activities of daily living, acute social stressors, and the absence of medical evidence, constitute clear and convincing reasons to discredit Plaintiff's symptom testimony. *See Batson*, 359 F.3d at 1197 (the ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld.) In sum, the ALJ provided clear-and-convincing reasons for discrediting plaintiff's symptom testimony.

## II.    Medical Opinion Evidence

Next, I turn to Plaintiff's argument that the ALJ erred in rejecting the medical opinions of Dr. Gomes, Dr. Dobles, and LMFT Kammerer. The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the

claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

The ALJ partially rejected the medical opinion of examining physician Dr. Gomes. The ALJ found that the GAF score of 57 assigned by Dr. Gomes, suggested "no more than moderate difficulty in social and occupational functioning." Tr. 82. The ALJ gave "significant weight" to Dr. Gomes' conclusion that Plaintiff could "perform unskilled work involving limited social interaction." Tr. 83. The ALJ, however, gave "less weight" to Dr. Gomes' determination that Plaintiff would be unable to tolerate normal workplace stressors and that she experienced periods of being highly irritable with insufficient stress management strategies. Tr. 82. The ALJ found that Dr. Gomes failed to "account for previous counseling records indicating that claimant had learned effective self-calming techniques that allowed her to manage her feelings of anger." Tr. 82–83. Nevertheless, the single event the ALJ cited as evidence Plaintiff had learned effective self-calming techniques occurred after Dr. Gomes' examination. Tr. 392, 717. Accordingly, the ALJ's assertion that Dr. Gomes failed to account for such "previous counseling records" is not supported by substantial evidence. Moreover, as discussed above, although Plaintiff learned some self-calming techniques, those techniques were often ineffective. Therefore, the ALJ failed to provide specific, legitimate reasons for rejecting Dr. Gomes' opinion.

The ALJ also rejected the opinion of examining physician Dr. Dobles. The ALJ indicated that Dr. Dobles' opinion was inconsistent with that of Dr. Gomes. Tr. 83. However, the ALJ

failed to articulate how the opinions were inconsistent. The Commissioner argues *post hoc* that Dr. Dobles' opinion was inconsistent with Dr. Gomes' opinion because Dr. Dobles assessed a GAF score of 45, whereas Dr. Gomes assessed a GAF score of 57. However, the doctors were consistent in the findings at issue, that Plaintiff would be unable to get along with co-workers and would be unable to tolerate the normal stresses of the workplace. Tr. 398, 404, 407.

The ALJ also found that Dr. Dobles relied on claimant's self-report. Tr. 83. However, the Ninth Circuit has recently held that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). In *Buck*, the Court held that a clinical interview and a mental status evaluation conducted by the psychiatrist provided sufficient objective measures. *Id.* Here, Dr. Dobles performed a clinical interview and administered the WAIS-IV, Trails A & B, and Beck Depression Inventory tests. Tr. 399, 401. As such, Dr. Dobles' examination included sufficient objective measures.

The ALJ additionally found that Dr. Dobles' ultimate conclusion that Plaintiff could not sustain regular employment was undermined by the fact that Plaintiff "worked as a friend's housekeeper for three years" and was able to perform chores such as "cleaning laundry, cooking, canning and freezing of garden products, and tending to farm animals and the garden." Tr. 83. Plaintiff's ability to perform chores, however, is not inconsistent with Dr. Dobles' conclusion that Plaintiff's anger issues would prevent her from maintaining employment. Further, the doctor's conclusion was supported by Plaintiff's history of being fired as result of her anger issues. Tr. 310, 394, 400. In fact, Plaintiff was fired from a job at a gas station on three separate occasions due to verbal altercations.[3] Tr. 400. Moreover, despite her ability to perform chores, the record reflects that Plaintiff regularly got into verbal and sometimes physical altercations

---

[3] Her former boss at the gas station rehired her twice. Tr. 400.

with Bob, who essentially functioned as her boss. Tr. 401, 558, 750, 771, 809, 967, 969–70. Accordingly, the ALJ failed to provide specific, legitimate reasons for rejecting Dr. Dobles' opinion.

After the hearing, Plaintiff's treating therapist LMFT Kammerer provided a function report. Tr. 947. The report was submitted to and considered by the Appeals Council and included in the record. Tr. 2, 5. The Commissioner argues that post-decision medical opinions are entitled to less weight. Indeed, the Ninth Circuit has held that the fact that an opinion post-dates the hearing can be a justification for finding it less persuasive. *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996). Nevertheless, the Appeals Council did not making a finding that LMFT Kammerer's opinion was not persuasive; rather, the Appeals Council found that her opinion did not pertain to the period before March 10, 2016. Tr. 2. The finding was erroneous, however, as the form which LMFT Kammerer filled out stated in bold that it pertained to the period prior to March 10, 2016. Tr. 947. Moreover, LMFT Kammerer treated Plaintiff since 2014 and had reviewed Plaintiff's prior records dating back at least to 2012. As such, the Appeals Council provided an improper basis for rejecting LMFT Kammerer's opinion.

The Commissioner also argues that LMFT Kammerer's observations that Plaintiff avoided unfamiliar settings and was unable to wait in the lobby with other clients were undermined by the fact that Plaintiff shopped, went to school concerts, went on camping trips with friends and family, attended weddings and funerals, and watched to her son's tee-ball games. Notably, Plaintiff reported that she hates shopping and only goes shopping a few times each month. Tr. 308. She further explained that she sometimes leaves the store after less than five minutes because there are "too many people." Tr. 324. She must sometimes leave the store abruptly even if she has not gotten everything on her list. Tr. 115. Although Plaintiff has

attended concerts at her son's school, she explained that she attends only one concert each year which is the only school activity that she attends over the course of the entire year. Tr. 106. The camping trips cited by the ALJ were infrequent activities that involved familiar people and Plaintiff canceled camping trips more often than not because she would become too overwhelmed. Tr. 325. Although the record includes mention of two weddings attended by Plaintiff, both occurred after LMFT Kammerer provided her report; moreover, Plaintiff indicated that the weddings had been highly stressful for her. Tr. 25, 27. Additionally, when attending her son's tee-ball games there are times she has to walk away from the game to stop herself from engaging in verbal altercations with other spectators. Tr. 25. Furthermore, LMFT Kammerer's observations are consistent with Dr. Dobles' opinion that Plaintiff is markedly limited in her ability to interact appropriately with the general public, and Dr. Gomes' opinion that Plaintiff has significant difficulty getting along with others. Tr. 398, 407.

Finally, the Commissioner argues that LMFT Kammerer's determination that Plaintiff was limited in her ability to understand and remember instructions was contradicted by her ability to perform household chores, garden, and assist with Bob's home brewing. However, the record indicates that Plaintiff often became confused and made many mistakes in carrying out her chores. Tr. 322–23. Additionally, LMFT Kammerer's assessment was consistent with numerous reports that Plaintiff's memory was impaired. Tr. 499, 506, 518, 522, 537, 547, 607, 829, 836, 844, 848, 852, 867, 872, 877. As such, the Commissioner has failed to provide a sufficient basis for rejecting LMFT Kammerer's opinion.

## III.  Lay Witness Testimony

Plaintiff's friend wrote a letter describing Plaintiff's impairments and activities. The letter generally mirrored Plaintiff's own statements regarding her limitations and daily activities.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless she gives germane reasons to reject their testimony. *Stout*, 454 F.3d at 694. "An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with the medical record is one such reason." *Bayliss*, 427 F.3d at 1218.

The ALJ gave Plaintiff's friend's testimony "significant weight, to the extent [it] justif[ied] a restriction to simple unskilled tasks involving no more than brief, infrequent, superficial contact with co-workers and the general public." Tr. 83. Plaintiff argues that the ALJ, in effect, rejected her friend's testimony that despite a living arrangement that limits her stressors, Plaintiff sometimes must escape her anxiety and experiences outbursts and crying. However, any error in assessing the friend's testimony was harmless because the ALJ provided clear-and-convincing reasons for rejecting Plaintiff's symptom testimony, and the lay witness did not describe limitations beyond those alleged by Plaintiff. *Molina*, 674 F.3d at 1122.

## IV.    Remand

As the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill*, 698 F.3d at 1162 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). However, an award of benefits may be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed

> to provide legally sufficient reasons for rejecting evidence,
> whether claimant testimony or medical opinion; and (3) if the
> improperly discredited evidence were credited as true, the ALJ
> would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020 (citations omitted).

The first element requires me to determine whether "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. "Administrative proceedings are generally useful where the record 'has [not] been fully developed,' *id.*, there is a need to resolve conflicts and ambiguities, *Andrews*, 53 F.3d at 1039, or the 'presentation of further evidence . . . may well prove enlightening' in light of the passage of time[.]" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.*

Although Plaintiff asserts that the VE testimony requires a remand for benefits, I find the record has not been fully developed and would therefore benefit from further administrative proceedings. Even if the medical opinion evidence at issue were credited as true, the Social Security Act bars payment of benefits when drug and alcohol abuse ("DAA") is a contributing factor material to a disability claim. 42 U.S.C. §§ 423(d)(2)(C) & 1382(a)(3)(J); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir.1998). "Material," in this context, means that the individual would not be found disabled if she stopped using drugs and/or alcohol. Plaintiff has the burden of showing that her DAA is not a contributing material factor to disability. *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). If there is evidence of DAA and the individual succeeds in proving she is disabled, then the ALJ must proceed to determine if the claimant would be disabled if she stopped using alcohol and/or drugs. *Bustamante*, 262 F.3d at 949; 20 C.F.R. §§ 404.1535 & 416.935. Here, the ALJ found that Plaintiff was not disabled, therefore,

there was no need to proceed with the analysis to determine whether Plaintiff's DAA was material to disability. Nevertheless, the ALJ found that Plaintiff's alcohol abuse was a severe impairment, and the record reflects that her alcohol consumption was an ongoing issue throughout the relevant period. Tr. 18, 78, 400, 465–66, 502, 513, 526, 531, 595, 882, 922, 937. As such, even if the medical evidence established disability, further proceedings would be necessary to determine the materiality of her alcohol consumption.

Accordingly, I remand this matter for further administrative proceedings. On remand, the ALJ shall: (1) accept the opinions of Dr. Gomes, Dr. Dobles, and LMFT Kammerer and incorporate their conclusions into the RFC or provide legally sufficient reasons for their rejection; (2) obtain additional VE testimony based on a reformulated RFC incorporating all of Plaintiff's limitations; (3) perform the DAA analysis if the ALJ determines Plaintiff is disabled; and (4) conduct any additional necessary proceedings.

## CONCLUSION

The ALJ's decision is not based on proper legal standards nor supported by substantial evidence. Therefore, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this 3<u>rd</u> day of October, 2018.

_s/Michael J. McShane_____
Michael McShane
United States District Judge